IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **TYLEAH McGUIRE** | |
| Plaintiff, | |
| v. | CA No. 1:12-cv-457 |
| **CITY OF AUSTIN** | JURY DEMANDED |
| Defendant | |

PLAINTIFF'S ORIGINAL COMPLAINT

## 1.  PRELIMINARY STATEMENT

1.1.   Plaintiff demands a jury for any and all issues triable to a jury.  This action seeks declaratory, injunctive, and equitable relief; compensatory and actual damages; and costs and attorney's fees for discrimination and retaliation suffered by Plaintiff, Tyleah McGuire, due to CITY OF AUSTIN (hereinafter "Defendant") taking adverse employment actions against her.

1.2.   This action arises under Title II of the Americans with Disabilities Act, as amended, Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq.; Local Government Code § 271, as amended and City of Austin Municipal Code of Ordinances § 5, as amended.

## 2.  JURISDICTION

2.1.   Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4), Title II of the Americans with Disabilities Act, as amended and Title VII of the Civil Rights Act, as amended, 28 U.S.C. § 1331,  29 U.S.C. §  794.

2.2.   This court has supplemental jurisdiction over any pendant state law claims under 28 U.S.C. § 1367. Defendant's governmental immunity, if any, is waived by TEXAS

LOCAL GOVERNMENT CODE § 271.152. This action is also brought pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.004, 37.011, 65.011 AND 65.023(a).

2.3.   Jurisdiction is appropriate because on or about December 26, 2010, Plaintiff filed City of Austin Form 283: Employment Discrimination Information, with the City Austin Equal Employment/Fair Housing Office. EXHIBIT 1 – Form 283.

2.4.   Jurisdiction is appropriate because on or about February 28, 2011 the Plaintiff filed, with the City of Austin Equal Employment/Fair Housing Office, a formal complaint alleging discrimination and retaliation. EXHIBIT 2 – Complaint filed with COA EE/FHO. The complaint was forwarded to, and investigated by, the Equal Employment Opportunity Commission.  EXHIBIT 3 – transmittal doc showing forward of complaint.

2.5.   Jurisdiction is also appropriate since the Equal Employment Opportunity Commission issued a decision allowing the Plaintiff the right to sue. EXHIBIT 4 – RTS letter.

2.6.   Declaratory and injunctive relief is sought pursuant to 28 U.S.C. § 2201 and 2202 and Title II of the Americans with Disabilities Act, as amended and Title VII of the Civil Rights Act, as amended and Local Government Code § 271, as amended and City of Austin Municipal Code of Ordinances § 5, as amended.

2.7.   Actual damages, to include back pay and front pay are sought pursuant to Title II of the Americans with Disabilities Act, as amended and Title VII of the Civil Rights Act, as amended and Local Government Code § 271, as amended and City of Austin Municipal Code of Ordinances § 5, as amended.

2.8.   Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP and Title II of the Americans with Disabilities Act, as amended and Title VII of

the Civil Rights Act, as amended and Local Government Code § 271, as amended and City of Austin Municipal Code of Ordinances § 5, as amended.

2.9.    Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1) and Title II of the Americans with Disabilities Act, as amended and Title VII of the Civil Rights Act, as amended and Local Government Code § 271, as amended and City of Austin Municipal Code of Ordinances § 5, as amended.

## 3.   VENUE

3.1.    Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff, at all times while employed with Defendant resided in this judicial district.

## 4.   PARTIES

4.1.    Plaintiff, Tyleah McGuire, is a current employee of Defendant and resides in Austin, Travis County, Texas.

4.2.    Defendant City of Austin, Texas is a Home Rule Municipality within the State of Texas, an employer qualified to do business in Texas, and employs more than 20 regular employees. Article, section 3 of Defendant City's home rule charter requires that the administration of the classified service be governed by "Personnel Policies" adopted by Austin's City Council. These Personnel Policies, once adopted, shall have the force and effect of law and may be modified or amended only by further Council action. Defendant can be served by serving Mayor Lee Leffingwell at 301 W. 2nd St., 2nd Floor, Austin, Texas 78701.

## 5.   STATEMENT OF THE CLAIMS

5.1.   FACTS

5.1.1.   Plaintiff is a 33 year- old female. Plaintiff began working for Respondent City of Austin on January 9, 2006, 6 years ago. Plaintiff's title with the Defendant was, and currently is, an Engineer A. EXHIBIT 5 – Engineer A Job Description.   EXHIBIT 6 – New Hire Form.

5.1.2.   Upon hire, Defendant assigned the position of Pavement Management Engineer.   The actual job duties to be performed for this position were aligned with Engineer C. EXHIBIT 7 – 2005 Engineer C job description.   EXHIBIT 8 – 2005 Pavement Mgmt. Engineer Job Vacancy.

5.1.3.   Plaintiff is the only Engineer A in the department of Public Works.   EXHIBIT 9 – PWD Engineering Employee list.   Defendant wholly failed to comply with the Defendant's Classification and Pay Plan Ordinance of 1977 with regard to Plaintiff. EXHIBIT 10 – 1977 Ordinance.

### THE COMPLAINT AND PROTECTED ACTIVITY

5.1.4.   Plaintiff was a female Engineer assigned to the Infrastructure Management Group.  At the time of hire, Plaintiff's job was similarly situated to that of Bridge Management Engineer though Plaintiff had more duties and responsibilities than that position[1]. EXHIBIT 11 – Bridge Management Engineer Vacancy. On or about May 7, 2010, Plaintiff received a needs improvement for her mid-year 2009-2010 performance review from her supervisor. Defendant's male Engineers, including but not limited to Mr. Moin, and Plaintiff's male assistant engineer did not meet their deadlines however, Defendant and Plaintiff's

---

[1] For instance, Mr. Moin's major responsibilities upon employment was to create and maintain a Bridge Management database. Though over six years into the position, Mr. Moin has wholly failed to create and maintain this database, yet Defendant made Mr.  Moin Plaintiff's supervisor and has subsequently given him pay increases including supervising pay income. Even more egregious is the fact that the memo requesting the supervisory pay increase, Mr. Moin's responsibility to create & maintain a database (an act he has completely failed to perform) was listed in support of his pay increase.  EXHIBIT 12 – pay increase memo.

supervisor held Plaintiff to a higher standard.  EXHIBIT 13 - chart Plaintiff submitted to the EEOC showing the SSPR discrepancies with Moin & Sharma.  Plaintiff also received a certificate of appreciation on May 26, 2010, from the Director and Assistant Director of Public Works citing Plaintiff's job performance as "above and beyond" 19 days after receiving a needs improvement from Plaintiff's supervisor. EXHIBIT 14 – Certificate.

5.1.5.  On June 28, 2010, Plaintiff's supervisor accelerated the deadlines on her 2009-2010 Success Strategy Performance Review (SSPR). EXHIBIT 15 – reminder memo.  The new deadlines were unreasonable and Plaintiff's male co-workers were not treated in the same manner. EXHIBIT 16 – SSPR appeal showing unreasonable deadlines. EXHIBIT 17 – FY11 year end SSPR's for Sharma showing same deadline missed that Plaintiff received Unacceptable rating for.  Defendant treated Plaintiff less favorably than the male Engineers in her group.

## THE CITY'S PATTERN OF RETALIATORY BEHAVIOR

5.1.6.  On or about September 29, 2010, Plaintiff received a needs improvement for her overall 2009-2010 performance review from Plaintiff's supervisor. Plaintiff's supervisor inaccurately stated Plaintiff missed deadlines and that she was not performing to the level of a Pavement Engineer.  The only deadlines Plaintiff missed were unreasonable and Plaintiff had filed a request to modify these deadlines.  Defendant wholly failed to modify any deadlines. Other male Engineers have missed specific deadlines, however, Defendant held Plaintiff to a higher standard than male Engineers in her group.

5.1.7.  Plaintiff's male predecessor had trouble keeping up with deadlines and e-mailed his supervisor for help. EXHIBIT 18 – Lambert's email requesting help.  Defendant did not discipline that male predecessor.

5.1.8.  Plaintiff's male assistant engineer received an above average on his end of year performance although he failed to meet deadlines specified on his performance review. EXHIBIT 19 – Sharma's FY11 Year End SSPR. Defendant treated Plaintiff less favorably than her male assistant engineers and the male Engineers.

5.1.9.  At initial time of hire in 2005, Plaintiff's Predecessor, Mr. Moin, Mr. Moin's Predecessor, Defendant paid the male assistant engineer more than the Plaintiff EXHIBIT 20 – chart submitted to EEOC showing engineer salary between predecessors and new hires.

5.1.10. At the time Plaintiff's complaint was filed, she was the only Engineer A within Public Works, and the male assistant engineer and all Professional Engineers within Public Works were paid more than the Plaintiff. EXHIBIT 21 – Engineer list from Texas Tribune data.

5.1.11. Between May 26, 2010 and October 26, 2010, Defendant put Plaintiff's name on the weekly agenda during IMG team meetings an exorbitant amount of times and Defendant was singling out Plaintiff by Plaintiff's supervisor in front of Plaintiff's male team members regarding her work and deadlines. Defendant did not treat male engineers in Plaintiff's department in this manner.  EXHIBIT 22 – Chart showing number of times each employee's name was in the Agenda, and associated agenda's.

5.1.12. On or about October 21, 2010, Plaintiff went to the Division Manager and told him about the agendas and explained that Plaintiff was being treated differently than the rest of her group.  EXHIBIT 23 – notes from meeting with Magana.  Despite the fact that Plaintiff's name was taken off of the agenda, Plaintiff's supervisor continued to discuss her work and deadlines with the group. EXHIBIT 24 – Plaintiff's personal notes from meetings,

that note Moin taking notes in his Day planner about Plaintiff and not Males.  Defendant treated Plaintiff less favorably than the males in her group.

5.1.13. On or about October 21, 2010, Plaintiff told the Division Manager that Plaintiff was being paid less than a comparable male Engineer in her group.  The Division Manager stated that this male Engineer must have more experience than Plaintiff. EXHIBIT 23, again, – notes from meeting with Magana.  Any experience this individual has with Defendant is an assistant engineer position. However, the male Engineer received guidance from Plaintiff and Plaintiff assigned his work.  Defendant treated Plaintiff less favorably than males.

5.1.14. Defendant has hired male engineers and promoted them to job classifications they did not meet the minimum qualifications for. Division Manager, Mr. Magana, was promoted to a Managing Engineer in late 2004 and did not meet the Supervisory Experience Requirements. EXHIBIT 25 – 2005 Managing Engineer Job Description. EXHIBIT 26 - Magana's resume/application for S&B Division Manager.  Mr. Poppitt was promoted to a Supervising Engineer in 2005 and did not meet the minimum number of employees supervised for that job classification. EXHIBIT 27 – Memo promoting Poppitt and Supervising Engineer Job Description. The male assistant engineer was hired in 2005 as an Engineer Associate C and did not meet the minimum qualifications for previous experience in a lead capacity. EXHIBIT 28 – 2005 Pav Mgmt Assistant Job Posting. EXHIBIT 29 - Sharma's resume.

5.1.15. On or about November 10, 2010, Plaintiff's supervisor placed Plaintiff on a Performance Improvement Plan (PIP).  Male Engineers, including but not limited to Mr. Magna and Mr. Sharman's missed deadlines as specified on their performance plans however,

Defendant did not place these male engineers on a PIP.  EXHIBIT 30 – SSPR's showing elevated ratings for missed deadlines for which McGuire was placed on a PIP.

5.1.16. Defendant did not follow City Policy, when on two separate occations, Mr. Magana failed to place Mr. Poppitt on a PIP when he received a Needs Improvement rating in 2005 and 2008. EXHIBIT 31 – SSPR showing Magana hand wrote that a PIP was not necessary directly under the verbiage that a PIP was required.

5.1.17. Defendant placed Plaintiff on a PIP immediately after Plaintiff asked questions about her pay as compared to Plaintiff's male co-workers.

5.1.18. On or about February 11, 2011, through an open records request Plaintiff received evidence that she was making less than Plaintiff's male assistant who is a Graduate Engineer A.  This disparity in compensation is discriminating in that Plaintiff holds a Professional Engineer License and Plaintiff's assistant engineer does not have a Professional Engineer License now or when he was hired.  Defendant treated Plaintiff less favorably than male engineers and Defendant's compensation system has an adverse impact against female Engineers in Plaintiff's department. EXHIBIT 32 – Disparate impact.

5.1.19. On or about February 14, 2011, after requesting open records concerning pay discrimination, Defendant escalated discrimination and retaliation against Plaintiff.

5.1.20. Soon after Plaintiff filed a Public Information Requesting Street and Bridge Engineer salary information, Defendant gave the male assistant engineer a 5 percent raise EXHIBIT 33 – PIR salary data & Texas Tribune Salary Data.

5.1.21. Plaintiff learned in late May 2011 that Defendant was not compliant with Title II. Plaintiff brought the complaint that the City was not compliant with Title II to David

Magna. Mr. Magna informed Plaintiff that Title II compliance was covered in the transition plan. EXHIBIT 34 – email to Magana voicing concerns about Title II.

5.1.22. The City's Original ADA Transition Plan of 1993, EXHIBIT 35 – 1993 Transition Plan, and the 2008 Pedestrian Master Plan which was adopted by resolution in 2009 as a the updated Transition Plan, EXHIBIT 36 – Transition Plan Update, both, have never been fully implemented by Defendant City.

5.1.23. Plaintiff understood in her position that to overlay a street counted as an alteration of the street which including making the street accessible to pedestrians by installing curb ramps or bringing existing curb ramps to current standards.  EXHIBIT 37 – Email to Magana with my ADA Compliance with Overlay Proposal. The City has wholly failed to do this. The sidewalk in front of both the Courthouse and State Capitol Building are not up to current accessibility standards pursuant to Title II of the Americans with Disabilities Act.

5.1.24. After Defendant received a copy of Plaintiff's email and compliance proposal wherein she complained that the City  was not complaint with Title II, Defendant, attempted to coerce, intimidate, threaten, and interfere with the Plaintiff's continued enjoyment and exercise of here rights under Title II in violation of Title II.  EXHIBIT 38 – inflammatory Email from Mike Curtis to discourage continued pursuit of Title II compliance.  See also emails to and from Ethics Officer.

5.1.25. David Magana told Plaintiff that Neighborhood Connectivity Division is responsible for sidewalks, the Transition Plan and the Pedestrian Master Plan.  Mr. Magna said they were dealing with this issue in fiscal year 2012. EXHIBIT 39 - Email from Magana stating FY12 for compliance. However, when the fiscal year budget came out it wholly failed to include any budget for curb ramps as related to overlay construction.

5.1.26. In fact, the Transition Plan of 2009 proposed for two Associate Engineers "C" to survey and collect date on non-compliant sidewalks and curb ramps. EXHIBIT 40 – excerpt from Transition plan re Data Collection. Defendant City wholly failed to do this. In 2010 the positions were advertised and interviewed for. One was never filled, as Mr. Poppitt neglected to timely complete the hiring process.  Poppitt did not receive a wavier from the Director of Public Works, and was required to re-advertise the position. EXHIBIT 41 – Notes from weekly meeting discussing positions and how Howard Lazarus wouldn't allow a wavier for one of them. The second position was used to give a promotion to the existing Construction Inspector in street and bridge without assuming the duties of the Transition Plan policies.  Defendant has wholly failed to have these duties of the Transition Plan completed.

5.1.27. Upon learning of this failure of Defendant to wholly comply with the ADA and the Transition Plan, Plaintiff made a complaint with the Ethics Officer.  EXHIBIT 42 – initial email to John Steiner.  The Ethics Officer suggested to Plaintiff that she not insult her supervisor.  The Ethics Officer also suggested that Plaintiff's new supervisor go to the law department.   The Ethics Officer's response to Plaintiff was inappropriate and condescending.

5.1.28. Plaintiff also reported to the Ethics Office that an Overlay Contract, funded via the American Recovery and Reinvestment Act, was not compliant with Title II. EXHIBIT 42 – Email to John Steiner that includes reference to ARRA.

5.1.29. In June 2011, Defendant continued to retaliate against Plaintiff and moved Plaintiff to a dead end position with no room for advancement.  Plaintiff has now been assigned the duties of a prior employee. This position that does not require an engineering degree nor

Registration as a Professional Engineer. EXHIBIT 43 – Program Coordinator Job Description. Replaced an individual who did not even have an engineering degree.

5.1.30. Respondent has discriminated and retaliated against Plaintiff based on her gender (female) and for having engaged in a protected activity in violation of Sec. 504 of the Rehabilitation Act of 1973, as amended, Title II of the Americans with Disabilities Act, as amended and Title VII of the Civil Rights Act of 1964, as amended.

5.1.31.  Mr. Poppitt made a gender biased comment in an email to Plaintiff prior to hiring her, which occurred 2 days before he recommended that she be paid at a wage lesser than her predecessor and much less than Mr. Moin, the other similarly situated Engineer.  Mr. Poppitt and Mr. Moin had a pre-existing implicit bias towards female subordinates which resulted in a disparate impact and was greatly exacerbated by the foundation laid by Mr. Poppitt with his years of isolating Plaintiff, and padding her internal Street & Bridge file with numerous allegations of poor performance  with 4 drafts of Performance Improvement Plans that he never implemented, and notes that blatantly state that he does not think Plaintiff can perform at the level of a professional engineer, but an Eng. Associate B. Mr. Poppitt further perpetuated his pre-existing gender bias that Plaintiff was uncomfortable working with men by his actions of isolating her to a separate section of the building away from the men in her group, alleging that she  was not a team player, and then not providing her the aid she needed to satisfactorily perform her duties. As the aid was desperately needed by anyone in Plaintiff's position showing that after my predecessor Mr. Lambert complained in complained in September and October 2003, Mr. Poppitt proposed a budget addition for Fiscal Year 2005 to hire an additional full time engineer to help Mr. Lambert with the Pavement Management Database and process, explaining in the requisition that there had always been two full time engineers working

on maintaining the Pavement Management System since 1999, but in 2003 the employee was removed due to internal realignment. The new employee proposition was not accepted in the FY05 budget, and Plaintiff's predecessor resigned January 2005. h Seal McClurkan, a database administrator who knew Mr. Lambert mentioned a large reason why Mr. Lambert left Street & Bridge was the excessive workload.  Mr. Moin just parroted back and expounded upon inaccurate expectations and opinions from what Mr. Poppitt had already wrote. As within a two year period there was such a great turnover with four new Engineers filling a void left by engineering positions (two of which were left vacant for as much as a full year.) All the new engineers turned to Mr. Poppitt as the authority on how the group should be managed. Even though Mr. Poppitt was so negligent in his Supervisory duties that he received Needs Improvement rating for his negligent hiring practices in leaving crucial positions fallow for months on end, and was eventually relieved of all his supervisory duties by Mr. Moin.

## 6.  CAUSES OF ACTION

6.1.   Based on the above facts, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act, as amended by discriminating against Plaintiff based on Plaintiff's gender. The City discriminated against Plaintiff in the connection with the terms, conditions, privileges and compensation of her employment and/or classified Plaintiff in a manner that would deprive her or tend to deprive her of any employment opportunity or adversely affect her status on the basis of Plaintiff's gender, female. The City's employment practices had an adverse and disparate impact on Plaintiff.

6.2.     Based on the above facts, the City retaliated[2] against Plaintiff because she engaged in protected activity under both Title VII of the Civil Rights Acts of 1964, as amended and Title II of the Americans with Disabilities Act, as amended.

6.3.      Defendant has also violated the Local Government Code and its own  Municipal Code of Ordinances (including but not limited to Ordinance No. 770414-I)and in doing such has breached its contract with Plaintiff. The City has violated Ordinance No.. 770414-I, The Classification and Pay Program for the Classified Personnel Service as follows:  Part 2, Section 1 - "classification of positions shall be done ... to accomplish the goal of equal pay for equal work " Part 2, Section 1(a)  - "positions ...shall be based upon an objective analysis of the duties and responsibilities"  Part 2, Section 1(b)  - "minimum...experience standards ...shall allow for selection and advancement of all potentially employable personnel, and the arbitrary use of experience ... shall be avoided" Part 2, Section 3 - "It shall be the continuing responsibility of the City Manager to see that individual positions are allocated to the proper classification and ... proper pay schedule and pay grade"  Part 2, Section 5(e)."where by reason of unusual circumstances rigid  adherence... would cause a manifest injustice, the Director of Personnel and the City Manager may make the necessary adjustments in each individual case."

6.4.      The City has adopted Personnel Polices and maintained a Non-Civil Service Position Classification and Pay Plan for employees of the City of Austin. This Pay Plan is established by a duly enacted ordinance of the City of Austin and has the full force and effect of law. This Pay Plan sets out the procedure for establishing the base Pay/Salary Zones for employees. These are segments for designated points of each salary range, typically noted as Zone 1, Zone II, Zone III and Zone IV, which provide increased pay

---

[2] Plaintiff also maintains a claim against Defendant City under The American Recovery and Reinvestment Act of 1999 § 1553, Whistleblower section. Plaintiff intends to amend this claim into the instant lawsuit after completing the administrative phase of the claim.

for increasing "years of relevant experience above minimum qualifications." This Pay Plan and the Personnel Policies are adopted by ordinance and constitute a unilateral contract offered by the City which Plaintiff accepted by performing. Defendant has failed to perform according to these contracts by violating and continuing to violate the established Position Classification and Pay Plan that requires proper application of the Plan. The above-described actions of Defendant were so outrageous in character and so extreme in degree that they exceeded all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

6.5.    As a direct and proximate result of the aforementioned arbitrary and capricious acts, the Plaintiff has suffered grievous harm, including but not limited to, humiliation and embarrassment among co-workers, customers and others; sustained damage to Plaintiff credibility; sustained damage to Plaintiff prospects for future employment.

## 7.   ADMINISTRATIVE CONDITIONS PRECEDENT

7.1.    Plaintiff brought this suit within ninety (90) days from the date of receipt of the EEOC's issuance of the notice of right to sue.

7.2.    Plaintiff has completed all administrative conditions precedent since Plaintiff filed Plaintiff's charge of discrimination and since 180 days had passed prior to Plaintiff requesting the right to sue.

## 8.   PRAYER

8.1.    WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

8.1.1.   Declare Defendant's conduct in violation of Plaintiff's rights;

8.1.2.   Enjoin the Defendant from engaging in such conduct;

8.1.3.   Order Defendant to pay Plaintiff back pay and front pay and benefits positions for which Plaintiff applied and was qualified for the period remaining until Plaintiff's normal retirement age.

8.1.4.   Order Defendant to pay Plaintiff's costs and attorneys' fees in this action.

8.1.5.   Award Plaintiff compensatory damages for benefits and emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

8.1.6.   Grant Plaintiff pre-judgment and post-judgment interest;

8.1.7.   Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

8.1.8.   Order and grant such other relief as is proper and just.

Respectfully Submitted,


/s/ Ellen Sprovach
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3555 Timmons Lane, Suite 610
Houston, Texas 77027
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
Gregg M. Rosenberg
ROSENBERG & SPROVACH

ATTORNEYS FOR PLAINTIFF